UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MOUAID HOMSI,

    Plaintiff,

v.

BOROUGH OF SEASIDE PARK, SEASIDE PARK POLICE DEPARTMENT, POLICE CHIEF FRANCIS LARKIN, in his personal, individual and official capacities, OFFICER ANTHONY FUMOSA (#504), in his personal, individual and official capacities, OFFICER ANDREW CASOLE (#144), in his personal, individual and official capacities, OFFICER M. WHALEN (#522), in his personal, individual and official capacities, and OFFICER MANTZ, in his personal, individual and official capacities

    Defendants.

OFFICER ANTHONY FUMOSA (#504), in his personal, individual and official capacities,

    Counter Claimant,

v.

MOUAID HOMSI,

    Counter Defendant.

Civ. No. 16-2937

**OPINION**

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon four motions for summary judgment, one filed

1

by Defendant Officer Michael Whalen (ECF No. 49) [1]; one by Defendant Officer Anthony Fumosa (ECF No. 50); one by Defendants Officers Andrew Casole and Allen Mantz (ECF No. 52) [2]; and one by Defendants Borough of Seaside Park ("Defendant Borough"), Seaside Park Police Department ("Defendant SSPD"), and Police Chief Francis Larkin (ECF No. 51) (collectively, "Defendants"). Plaintiff Mouaid Homsi ("Plaintiff") opposes each Motion. (ECF Nos. 59–60, 57, 61, 58.) The Court has decided these Motions on the written submissions of the parties, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motions are granted as to Defendants Fumosa, Casole, Mantz, and SSPD; and denied as to Defendants Whalen, Borough, and Larkin.

## BACKGROUND

This case arises from Defendants' purported violations of Plaintiffs' civil rights. At all relevant times, Defendants Whalen, Fumosa, Casole, and Mantz were police officers for Defendant SSPD, and Defendant Larkin was the Police Chief.

On Memorial Day, May 26, 2014, Plaintiff was in Seaside Park, New Jersey for a group motorcycle ride that Plaintiff described as a "bike run." (Homsi Dep. 35:5–12, 35:21–25, ECF No. 57-5.) According to Plaintiff, he gave his bag and the keys to his motorcycle to another person so that that person could leave to buy more alcohol. (*Id.* 73:11–74:18.) While that person was gone, Plaintiff testified that he stayed on the beach and boardwalk with his friends. (*Id.* 79:3–21.) Plaintiff claims that, five to ten minutes later, he learned from a friend that the person who had borrowed Plaintiff's motorcycle had been followed by the police, and that the motorcycle had been left in a garage. (*Id.* 82:16–83:9.) Plaintiff testified that he then went to the

---

[1] Defendant Whalen is pled only as "Officer M. Whalen." (*See* Compl. at 1, ECF No. 1.)
[2] Defendant Mantz is pled only as "Officer Mantz." (*See* Compl. at 2.)

location where his motorcycle had been left and retrieved his bag. (*Id*. 83:9–13, 91:20–25.)

Defendant Fumosa observed an individual driving a motorcycle at a high rate of speed and inferred—based on the changing position of the motorcycle with regard to other cars—that the motorcycle was going in and out of lanes over double yellow lines. (Fumosa Dep. 86:5–18, 93:16–25, ECF No. 57-2.) Defendant Fumosa eventually lost sight of the motorcyclist, but civilians told him that the motorcycle had pulled into the driveway of a particular building. (*Id*. 87:2–16.) Fumosa testified that he then observed Plaintiff running out of the same building. (*Id*. 87:17–25.) Fumosa described Plaintiff as being the same person as the person who had been riding the motorcycle erratically. (*Id*. 87:20 ("the same guy, sports gear, and everything").) Plaintiff claims that he was walking, not running. (Homsi Dep. 108:24–109:4.) Defendant Fumosa yelled "stop," but Plaintiff did not stop. (Fumosa Dep. 87:1–3; Homsi Dep. 109:12–15.) According to Plaintiff, he heard Defendant Fumosa yell "stop" but drew the conclusion that the command was not intended for him. (Homsi Dep. 109:12–15.)

Defendant Whalen had been checking parking meters when he observed a motorcycle traveling at a high speed. (Whalen Dep. 74:5–16, ECF No. 57-3.) Shortly thereafter, Defendant Fumosa "called out that he was in a foot pursuit" and provided Plaintiff's location. (*Id*. 74:16–18.) Defendant Whalen claims that he then observed Plaintiff running past him, and that Defendant Whalen then began running towards Plaintiff. (*Id*. 74:18–23.) According to Plaintiff, Plaintiff began running only when Defendant Whalen started running towards him. (Homsi Dep. 117:12–13.)

Plaintiff claims that he ran a total of about five to ten feet, and that after that he stopped running, turned around, put his hands up, and said "stop, stop, stop. Wait." (*Id*. 117:13–5, 119:4–5.) Plaintiff testified that he was then tackled to the ground by Defendant Whalen. (*Id*. 117:15–

3

16, 125:1–18.) The amount of time between Plaintiff's surrender and his being tackled is not clear. Plaintiff testified that the time between his putting his hands up and the tackle was "instantaneous." (*Id*. 125:4–7.) But he also testified that he had time to come to a full stop, turn around, and speak several words before being tackled. (*Id*. 125:14–18.)

Defendant Whalen denies tackling Plaintiff and states that during the foot pursuit Plaintiff tripped and fell into the street. (Whalen Dep. 74:24–75:4.) Defendant Whalen stated that he then kneeled next to Plaintiff. (*Id*. 75:4–5.)

At least one other police officer had joined the pursuit during this time. (Homsi Dep. 119:7–25.)

Defendant Mantz was called to the scene, and when he arrived he observed Plaintiff sitting on the curb and Defendant Fumosa standing next to him. (Mantz Dep. 66:16–19, ECF No. 52-6.) Defendant Mantz drove Plaintiff to the police station after his arrest; this is the only involvement Defendant Mantz had with this case that Plaintiff can recall. (Homsi Dep. 163:5–164:25.)

Defendant Casole was called in to perform an Alcotest, a breath test to measure blood alcohol concentration ("BAC"). (Casole Dep. 95:3–4, ECF No. 52-5.) Defendant Casole reported directly to the police station. (*Id*. 95:13–15.) The Alcotest showed that Plaintiff's BAC was .06%. (*Id*. 128:25–129:3.) Defendant Casole also performed a Horizontal Gaze Nystagmus test to determine whether Plaintiff was intoxicated; that test showed that Plaintiff showed four out of six signs of nystagmus. (*Id*. 110:12–25.)

Defendant Fumosa smelled alcohol on Plaintiff, but he did not recall Plaintiff slurring his speech, having bloodshot eyes, or yelling. (Fumosa Tr. 129:25–130:3, 134:7–17.) Defendant Fumosa issued five motor vehicle summonses against Plaintiff: driving while intoxicated,

4

N.J.S.A. § 39:4-50; careless driving, N.J.S.A. § 39:4-97; reckless driving, N.J.S.A. § 39:4-96; unsafe lane change, N.J.S.A. § 39:4-88; and failure to signal, N.J.S.A. § 39:4-126. (Def. Fumosa's Stmt. Undisputed Material Facts ¶ 33, ECF No. 50-3.) He also charged Plaintiff with eluding an officer, N.J.S.A. § 2C:29-2(b); resisting arrest, N.J.S.A. § 2C:29-2(a)(2); and obstructing administration of law, N.J.S.A. § 2C:29-1. (*Id.*)

Plaintiff pled guilty to reckless driving, and the other four motor vehicle summonses were dismissed. (*Id.* ¶ 34.) Plaintiff entered the Pretrial Intervention Program ("PTI"), which resolved the three criminal charges. (*Id.*) Plaintiff now claims that when he entered his guilty plea before a Seaside Park Municipal Court judge, he did not truthfully answer the questions he was asked. (Homsi Dep. 126:18–128:5.) Plaintiff maintains that, contrary to his statements before the Municipal Court, he was not driving the motorcycle. (*Id.* 128:24–129:2.) He claims that he was untruthful before the Municipal Court because he "was presented with a charge that was known to [him] to be illegal," he could not afford to retain his attorney, and he could not afford an expert that would be needed to disprove the criminal charges against him. (*Id.* 128:24–129:23.)

Defendant Whalen could not recall receiving any training specifically on how to engage in a foot pursuit with a suspect. (Whalen Dep. 22:14–20, 64:7–11.) An expert report commissioned by Plaintiff found, among other things, that Defendant Whalen had received no formal training from Defendant SSPD and did not know whether he was allowed to handcuff Plaintiff. (Rivera Rpt. at 16, ECF No. 57-12.) This report also found that several excessive force complaints had been filed against other officers in previous years. (*Id.* at 42.) Some of these complaints were not reported to the Ocean County Prosecutor, were investigated incompletely or late, and accepted police officers' written submissions without challenge. (*Id.* at 41–43, 46, 48.) An expert retained by Defendants Borough, SSPD, and Larkin disputes many of these claims.

5

(*See* Celeste Rpt. ECF No. 64-2–64-3.)

Plaintiff brought the present case on May 23, 2016, alleging nine Counts: (1) violation of First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Compl. ¶¶ 84–101, ECF No. 1); (2) assault and battery (*id*. ¶¶ 102–08); (3) violations of the New Jersey Constitution under N.J.S.A. § 10:6-2(c) (*id*. ¶¶ 109–16); (4) negligence (*id*. ¶¶ 117–27); (5) false arrest (*id*. ¶¶ 128–34); (6) malicious prosecution (*id*. ¶¶ 135–41); (7) intentional infliction of emotional distress (*id*. ¶¶ 142–46); (8) abuse of process (*id*. ¶¶ 147–51); and (9) civil conspiracy (*id*. ¶¶ 152–59). The Complaint, as written, alleges all Counts against all Defendants. (*See id*. ¶¶ 101, 108, 116, 127, 134, 141, 146, 151, 159.) Plaintiff has subsequently withdrawn some of the Counts against particular Defendants or claimed that he never brought those Counts in the first place. (*See* Br. in Opp'n to Whalen Mot. Summ. J. at 1, ECF No. 59; Br. in Opp'n to Fumosa Mot. Summ. J. at 2, ECF No. 57; Br. in Opp'n to Casole & Mantz Mot. Summ. J. at 1, ECF No. 61.) Plaintiff withdraws his intentional infliction of emotional distress claim against all Defendants. (Br. in Opp'n to Fumosa Mot. Summ. J. at 2.)

On October 24, 2018, Defendant Whalen moved for summary judgment. (ECF No. 49.) Defendant Fumosa also moved for summary judgment on the same day. (ECF No. 50.) On October 26, 2018, Defendants Casole and Mantz filed a Motion for Summary Judgment (ECF No. 52); separately that day Defendants Borough, SSPD, and Larkin moved for summary judgment (ECF No. 51). Plaintiff received a two-week extension to respond to all Motions. (ECF No. 54.) On November 19, 2018, Plaintiff filed Opposition to each Motion. (ECF Nos. 59–60, 57, 61, 58.) Each group of Defendants replied separately on November 26, 2018. (ECF Nos. 63, 65, 62, 64.) These Motions are presently before the Court.

6

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Consequently, "[s]ummary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

7

**DISCUSSION**

I.  **Summary Judgment is Denied for Defendant Whalen**

Plaintiff brings, among other things, a § 1983 claim against Defendant Whalen for excessive force. But a genuine dispute as to material facts exists, so summary judgment as to Defendant Whalen is denied. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Excessive force in effectuating an arrest is an unreasonable seizure under the Fourth Amendment of the U.S. Constitution and therefore gives rise to a § 1983 claim. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Fourth Amendment's reasonableness test is fact-specific. *Id.* at 396. The Court must examine the use of force from the perspective of a reasonable officer at the scene, considering the officer's need to make split-second decisions and not accounting for the benefits of hindsight. *Id.* at 396. The relevant factors to be considered in determining if excessive force was employed include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The court should also consider "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

Viewing the facts in the light most favorable to Plaintiff, Defendant Whalen tackled Plaintiff after Plaintiff had clearly surrendered to the police; where other officers were present to

8

help restrain Plaintiff should that need arise. On the other hand, viewing the facts in a light favorable to Defendant Whalen, Plaintiff tripped of his own accord. The Court cannot, at this juncture, determine whether Defendant Whalen employed excessive force, or indeed any force at all.

The same factual dispute prevents a grant of summary judgment on the basis of qualified immunity. "[Q]ualified immunity shields government officials [engaged in discretionary functions] from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court must determine whether the right violated was clearly established such that "every reasonable official would have understood that what he [was] doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Further, while "qualified immunity is an objective question to be decided by the court as a matter of law," it is up to the jury to "determine[] disputed historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004); *see also Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). The same factual disputes dismissed above leave unresolved whether a clearly established constitutional right was violated. Therefore, summary judgment cannot be granted on the grounds of qualified immunity.

## II. Summary Judgment is Granted for Defendant Fumosa

After taking account of Plaintiff's withdrawal of various claims, Plaintiff alleges that Defendant Fumosa violated Plaintiff's federal constitutional rights under 42 U.S.C. § 1983 (Count 1), violated the New Jersey Constitution under N.J.S.A. § 10:6-2(c) (Count 3), was negligent (Count 4), effected a false arrest (Count 5), engaged in malicious prosecution (Count

9

6), committed abuse of process (Count 8), and committed civil conspiracy (Count 9). Each of these claims fails, and summary judgment is granted for Defendant Fumosa.

> A. *42 U.S.C. § 1983*

Plaintiff alleges three distinguishable claims against Defendant Fumosa under the U.S. Constitution: false arrest, malicious prosecution, and failure to intervene. Plaintiff's guilty plea to reckless driving vitiates the false arrest and malicious prosecution claims, and the fact that Defendant Fumosa lacked a reasonable opportunity to intervene vitiates the final claim.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). A false arrest claim will not stand so long as there is probable cause for *any* crime for which the person was arrested. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Phila.*, 860 F.2d 568, 575–76 (3d Cir. 1988)). Here, Plaintiff was arrested on several charges, including reckless driving. Plaintiff later pled guilty to the reckless driving charge, which establishes probable cause for that charge. Plaintiff's false arrest claim therefore fails.

To prove malicious prosecution under § 1983, a plaintiff must show that:

(1) the defendants initiated a criminal proceeding;
(2) the criminal proceeding ended in plaintiff's favor;
(3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). The second element, favorable termination, has not been met in this case. Plaintiff was issued two bundles of charges: three charges related to resisting arrest,

and five motor vehicle summonses. Plaintiff agreed to enter the PTI program to resolve the charges relating to resisting arrest; entry into PTI is not a favorable termination. *Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154 (3d Cir. 2012). Plaintiff pled guilty to the reckless driving charge, and a guilty plea is not a favorable termination. Finally, the other motor vehicle charges have not been favorably terminated, even though they were dismissed, because a conviction on *any* charge arising out of a single act is an unfavorable termination for *all* charges. *Kossler*, 564 F.3d at 188 (finding that aggravated assault, disorderly conduct, and public intoxication charges all arose from the same act of "intentionally making physical contact with a city police officer after consuming alcohol"). Here, Plaintiff's act of reckless driving encompasses all motor vehicle charges; as such, these charges were not favorably terminated, and Plaintiff's § 1983 malicious prosecution claim fails.

Plaintiff's § 1983 claim against Defendant Fumosa for failure to intervene is insufficient as well. A police officer has a duty to take reasonable steps to intervene in excessive force taken by another officer, as long as the officer has a "realistic and reasonable opportunity" to intervene. *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002) (applying the doctrine under the Eighth Amendment); *Bryant v. City of Phila.*, 518 F. App'x 89, 93 (3d Cir. 2013) (expanding *Smith*'s reasoning to other constitutional violations). In this case, even taking the facts in the light most favorable to Plaintiff, only a moment passed between Plaintiff surrendering and Defendant Whalen's tackle. Defendant Fumosa therefore lacked a "realistic and reasonable opportunity" to prevent Defendant Whalen from tackling Plaintiff. Summary judgment for Defendant Fumosa on Plaintiff's § 1983 claims is therefore appropriate.

    B.    *N.J.S.A. § 10:6-2(c)*

N.J.S.A. § 10:6-2(c) states that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, . . . may bring a civil action for damages and for injunctive or other appropriate relief.

State law under this provision largely parallels federal law under § 1983. *See, e.g., Morillo v. Torres*, 117 A.3d 1206, 1213 (N.J. 2015). Specifically, § 1983's requirement that favorable termination exist for a malicious prosecution claim has been followed under § 10:6-2(a). *Perez v. City of Elizabeth*, 2016 WL 6134927, at *4 (N.J. Super. Ct. App. Div. Oct. 21, 2016); *Obchinetz v. Maple Shade Twp.*, 20155 WL 3869711, at *4 (N.J. Super. Ct. App. Div. Oct. 21, 2015). Because the analysis is the same for Plaintiff's § 1983 claims and § 10:6-2(c) claims, summary judgment in favor of Defendant Fumosa is appropriate as to the latter.

    C.    *Negligence;, False Arrest, and Malicious Prosecution*

Plaintiff brings common law causes of action for negligence, false arrest, and malicious prosecution. Because probable cause existed for Fumosa to arrest and charge Plaintiff, summary judgment is appropriate for these claims.

Where probable cause exists, a plaintiff may not establish any of these causes of action. The elements of negligence are "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cty. of Essex*, 960 A.2d 375, 584 (N.J. 2008)). Where probable cause exists, a police officer has a privilege to arrest a suspect. *See* Restatement (Second) of Torts § 121 (Am. Law Inst. Nov. 2018 update). Probable cause therefore eliminates any duty an officer may have not to arrest a suspect, and destroys any claim of negligence. False arrest is the arrest of a party without legal justification. *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000). A finding of probable cause also defeats a cause of action for false arrest. *Id.* at 1139. A claim of

malicious prosecution requires proof "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) *that there was an absence of probable cause for the proceeding*, and (4) that it was terminated favorably to the plaintiff." *Helmy v. City of Jersey City*, 836 A.2d 802, 806 (N.J. 2003) (citing *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975)) (emphasis added). Because the absence of probable cause is an element of malicious prosecution, a finding of probable cause forecloses a malicious prosecution claim as well.

In this case, probable cause existed for each offense with which Defendant Fumosa charged Plaintiff. Plaintiff pled guilty to reckless driving, N.J.S.A. § 39:4-96, establishing probable cause for that offense. As to the other driving offenses, Defendant Fumosa observed an individual on a motorcycle driving quickly and moving in and out of lanes in violation of traffic laws. He then observed Plaintiff walking from the same place Defendant Fumosa believed the motorcycle to be and wearing the same clothes as the motorcyclist. Later, Defendant Fumosa smelled alcohol on Plaintiff. This is sufficient to establish probable cause for driving while intoxicated, which is defined as "operat[ing] a motor vehicle while under the influence of intoxicating liquor . . . or operat[ing] a motor vehicle with a blood alcohol concentration of 0.08% or more." N.J.S.A. § 39:4-50. It also provides probable cause for careless driving, defined as "driv[ing] carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property." N.J.S.A. § 39:4-97. Additionally, Defendant Fumosa observed the driver of the motorcycle failing to "drive[] as nearly as practicable entirely within a single lane and . . . not be moved from that lane until the driver has first ascertained that the movement can be made with safety," providing probable cause for an unsafe lane change. N.J.S.A. § 39:4-88. Finally, Defendant Fumosa's observations provided probable cause for failure to signal, defined as "turn[ing] any vehicle without giving an

13

appropriate signal." N.J.S.A. § 39:4-126.

Defendant Fumosa also had probable cause for the three criminal charges related to evading arrest. Defendant Fumosa observed a person on a motorcycle failing to pull over for police officers. He then observed Plaintiff running away from police officers after being ordered to stop. He therefore had probable cause to arrest and charge Plaintiff for eluding an officer, defined as "while operating a motor vehicle . . . knowingly flee[ing] or attempt[ing] to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop." N.J.S.A. § 2C:29-2(b). He also had probable cause for resisting arrest, defined as "by flight, purposely prevent[ing] or attempt[ing] to prevent a law enforcement officer from effecting an arrest." N.J.S.A. § 2C:29-2(a)(2). Finally, Defendant Fumosa had probable cause for obstructing administration of law, which includes "prevent[ing] or attempt[ing] to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle." N.J.S.A. § 2C:29-1. (*Id.*)

Probable cause defeats Plaintiff's common law claims for negligence, false arrest, and malicious prosecution. Summary judgment in favor of Defendant Fumosa on these Counts is therefore granted.

### D. *Abuse of Process*

Abuse of process is "the improper, unwarranted, and perverted use of process after it has been issued." *Ash v. Cohn*, 194 A. 174, 176 (N.J. Ct. Err. & App. 1937). Importantly, "New Jersey law requires a further coercive act *after the process issues* in order to prove an improper use of legal procedure." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1038 (3d Cir. 1988) (emphasis added) (collecting cases); *see also Fleming v. United Parcel Serv., Inc.*, 604 A.2d 657, 682 (N.J. Super. Ct. Law Div. 1992) (finding that defendant's suggestion that plaintiff

resign *prior* to his arrest is insufficient to establish abuse of process because there was no coercive act *after* the arrest). Here, Plaintiff has not presented any evidence showing that Defendant Fumosa took any coercive action after arresting and charging Plaintiff. For this reason, Defendant Fumosa is entitled to summary judgment on this Count.

      E.    *Civil Conspiracy*

Civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (citing *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)). Inferring an agreement from circumstantial evidence is acceptable and, in many cases, may be the only way to establish a claim of conspiracy. *Morgan*, 633 A.2d at 998. However, in this case Plaintiff has put forward no evidence, circumstantial or otherwise, showing why or how Defendant Fumosa could have worked together with others to take any unlawful action. Defendant Fumosa had no apparent part in the alleged excessive force effected by Defendant Whalen. And Defendant Fumosa's arrest and charging of Plaintiff, as explained above, was not unlawful. Summary judgment is therefore granted for Defendant Fumosa on this claim.

Because all claims against Defendant Fumosa fail, summary judgment is granted in his favor.

### III.   Summary Judgment is Granted for Defendants Casole and Mantz

Plaintiff brings claims against Defendants Casole and Mantz for federal constitutional violations under 42 U.S.C. § 1983 (Count 1), state constitutional violations under N.J.S.A. § 10:6-2(c) (Count 3), negligence (Count 4), false arrest (Count 5), and civil conspiracy (Count 9).

15

Summary judgment is appropriate on behalf of Defendants Casole and Mantz on each of these Counts.

As to Plaintiff's § 1983 claims, Defendants Casole and Mantz did not tackle Plaintiff, did not arrest him, and did not charge him. But Plaintiff alleges that they are liable nonetheless for failure to intervene. However, Defendants Casole and Mantz were not present when Defendant Whalen allegedly tackled Plaintiff, so they lacked a "realistic and reasonable opportunity" to prevent that constitutional violation. *See Smith*, 293 F.3d at 650–51. And Defendant Fumosa's actions in arresting and charging Plaintiff were proper because probable cause existed for each charge. Therefore, Defendants Casole and Mantz cannot have failed to intervene in a constitutional violation.

Plaintiff's common law claims against these defendants similarly fail. Defendants Casole and Mantz were not present when Defendant Whalen allegedly tackled Plaintiff, so they can bear no responsibility for that incident. Defendants Casole and Mantz also cannot be held vicariously liable for Defendant Fumosa's arrest and charge of Plaintiff because these actions were not tortious. Summary judgment is therefore granted for Defendants Casole and Mantz.

## IV. Summary Judgment is Granted for Defendant SSPD

"In New Jersey a municipal police department is not an entity separate from the municipality . . . ." *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006). Where both a municipality and its police department are defendants in an action, the police department should be dismissed. *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 181 (3d Cir. 2013). For this reason, summary judgment should be granted in favor of Defendant SSPD.

## V. Summary Judgment is Denied for Defendants Borough and Larkin

The liability of Defendants Borough and Larkin hinges on their roles as policymakers. To

hold a municipality liable, a plaintiff must show that there was a policy or custom causing the constitutional deprivation. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Where a claim is based on a failure to train or to supervise, a plaintiff must demonstrate both "deliberate indifference to the rights of persons with whom those employees will come into contact," *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)) (internal quotations omitted); as well as a "causal nexus" between the failure to train and the constitutional injury, *id.* 222, 226–27 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). A finding of deliberate indifference requires that the constitutional violation be a "highly predictable consequence" of the failure to train, *id.* at 225 (citing *Connick*, 563 U.S. at 64), which arises where a pattern of similar violations has occurred in the past, *id.* at 223 (citing *Connick*, 563 U.S. at 62), or where the need for training is "obvious," *id.* (providing the example that the need to train officers on the use of deadly force is obvious (citing *Canton*, 489 U.S. at 390 n.10)). An individual may also be held liable as a policymaker in the same manner as a municipality. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In this case, the underlying constitutional violation that has survived summary judgment is Defendant Whalen's alleged tackle of Plaintiff. There is a genuine dispute of material fact as to whether Defendant Whalen's action is a highly predictable consequence of a failure to train and whether a failure to train caused the constitutional violation. Plaintiff has presented evidence showing that Defendant Whalen had not received any training from Defendants Borough or Larkin on how to pursue a suspect on foot. Plaintiff has also filed an expert report showing that past complaints of excessive force were not reported properly to the Ocean County Prosecutor and were not thoroughly investigated. Plaintiff has therefore provided sufficient facts to put into

17

question whether Defendants Borough and Larkin failed to train Defendant Whalen and whether that failure caused a use of excessive force in a way that was highly predictable. Summary judgment in favor of Defendants Borough and Larkin is therefore denied.

## CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment are granted as to Defendants Fumosa, Casole, Mantz, and SSPD; and the Motions are denied as to Defendants Whalen, Borough, and Larkin. An appropriate order will follow.

Date:  12/14/2018   /s/ Anne E. Thompson  
                ANNE E. THOMPSON, U.S.D.J.